**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**GERALDINE LOCHREN and TOMEKA WOODS, on their own behalf and on behalf of those similarly situated,**

**CASE NO.: 6:21-CV-1640-WWB-LRH**

**Plaintiffs,**

**vs.**

**HORNE LLP,**

**Defendant.** /

**JOINT MOTION FOR INITIAL APPROVAL OF SECOND AMENDED COLLECTIVE ACTION SETTLEMENT AGREEMENT**

Plaintiffs, Geraldine Lochren and Tomeka Woods ("Plaintiffs"), on their own behalf and on behalf of those similarly situated, and Defendant, Horne, LLP ("Horne" or "Defendant") have entered into a Second Amended Collective Action Settlement Agreement (the Agreement") to resolve Plaintiffs' claims on a collective basis and jointly renew their motion to find the Agreement is fair and reasonable and should be approved, and for certification of an FLSA collective action for settlement purposes.[1] Plaintiffs also move for an award of attorney's fees. In support of this Renewed Joint Motion, the parties file the following memorandum of law.

## I. Factual and Procedural Background

[1] A copy of the Second Amended Settlement Agreement is attached as Exhibit A and the Parties have made several edits which encompass the Court's concerns outlined in the Order dated August 9, 2023 [D.E. 75]. The Parties are also including a copy of the general releases to be signed by Plaintiffs as consideration for their service awards as Exhibit B.

Plaintiffs allege that Defendant violated the Fair Labor Standards Act, 29 U.S.C.§§201, *et seq*. ("FLSA") by misclassifying Plaintiffs and individuals who were employed by Horne, LLP on the Texas Rental Relief Program ("TRRP") as QA/QC Specialists or Eligibility Analysts ("Putative FLSA Collective Members"). Plaintiffs claim that they and all FLSA Putative Collective Members were improperly classified as exempt employees under the FLSA. Horne, in turn, maintains that the Putative FLSA Collective Members were properly classified as exempt employees under the FLSA. As a result, Horne maintains that it has not violated the FLSA and is not liable in any manner to Plaintiffs or to the putative collective.

Plaintiff initially filed suit on October 4, 2021 [D.E. 1], with Defendant filing a motion to dismiss on November 16, 2021, seeking to dismiss the collective action allegations on personal jurisdiction grounds. *See* D.E. 17. After Plaintiffs filed an Amended Complaint [D.E. 22], Defendant refiled its same motion to dismiss. *See* D.E. 25. Plaintiffs thereafter filed a Response [D.E. 27] and Defendant filed a Reply [D.E. 33]. On May 3, 2022, this Court denied the motion to dismiss without prejudice, finding that it was premature [D.E. 39], and Defendant answered on May 16, 2022 [D.E. 40].

During this period, Plaintiffs and Defendant were also progressing through this Court's FLSA Scheduling Order. *Se* D.E. 19. After several conferences among counsel by telephone and by e-mail, Defendant ultimately agreed to produce class-wide data and information for all FLSA Putative Collective Members. Each side generated potential settlement damage models and shared them with each other.

The Parties attended mediation on June 6, 2022, before Carlos Burruezo, Esq., a well-respected and experienced class/collective action mediator. The Parties mediated for the better part of the day that day but were unable to reach an agreement that day. The Parties continued their settlement discussions through Mr. Burruezo in hopes an agreement could be reached. Ultimately, Mr. Burruezo made a mediator's proposal to both Parties (who had agreed and asked Mr. Burruezo to do so) on June 21, 2022, and on June 29, 2022, both Parties accepted the proposal. On October 4, 2022, the Parties moved for approval of the collective action settlement. *See* D.E. 51. This Court denied without prejudice that motion by written Order on January 24, 2023, outlining several areas of concern for the Court. *See* D.E. 24. The Parties filed a Renewed Motion on February 21, 2023 [D.E. 64] which was denied based on the Court's primary concerns over an objection period as outlined in Orders dated June 14, 2023 [D.E. 72] and August 9, 2023 [D.E. 75]. The Parties have amended the settlement to now include that process requested by the Court and submit the current Agreement as a fair and reasonable resolution of this collective action.

The parties believe that the terms of the proposed settlement, which are summarized below, are fair and should be approved. The settlement grants relief for the Plaintiffs, provides an appropriately limited release in favor of the Defendant for federal and state wage and hour claims relating to the alleged misclassification here, and the total settlement amount is properly discounted to account for the Plaintiffs' probability of success.

## II. Summary of the Settlement

The settlement agreement outlining the specific terms is attached as Exhibit A. Defendant will pay $375,000 to settle this collective action ("Common Fund") which includes all overtime, liquidated damages, fees, costs, and amounts of any kind. $247,500 of the Common Fund constitutes payments to the FLSA Putative Collective Members ("Net Common Fund"). The Net Common Fund shall be distributed on a *pro rata* basis in accordance with Paragraph 6(d) of the Settlement Agreement. In addition, two $5,000 amounts of the Common Fund will be paid to both named Plaintiffs as a service award in exchange for a general release of all claims by Plaintiffs only. $5,000 of the Common Fund is attributed to a third-party administrator to administer the notice and settlement process. Finally, thirty percent (30%) of the Common Fund, or $112,500, is attributed to Plaintiff's attorneys' fees and costs. The agreement also provides first class mailing and e-mailing of the proposed Notice and Claims Administration Form giving the FLSA Putative Collective Members an opportunity to "opt-in" to the settlement agreement. These individuals have 45 days to submit a Claims Administration Form. The Parties' proposed Notice and Claims Administration Form are attached as Exhibit A and B to the Agreement. Additionally, the Putative FLSA Collective Members now have 45 days to object to the Settlement per the Court's previous instructions. *See* Paragraph 13 of Exhibit A.

The formula for the amount to be paid to each FLSA Putative Collective Member is described in Paragraph 6(d) of the Agreement and provides additional

detail as to how it was calculated. It includes each collective members' individual weeks worked and salary rates, which from there the Parties calculated each collective members' regular rate of pay, overtime rate of pay, and overtime compensation based on estimated overtime hours worked. To put the settlement in perspective, if each and every collective member worked fifty (50) hours per week *every week they worked for Defendant in the limitations period*, the amount of overtime owed (before liquidated damages) would be approximately $377,043, nearly the equivalent of the agreed Common Fund settlement here. Even after attorneys' fees and costs and other items described above are deducted from the Common Fund, leaving the Net Common Fund ($247,500), this would equal over forty-six (46) hours of overtime compensation.[2] The chart attached to the Agreement as an exhibit shows how the Parties used 45 hours per week as an example basis to determine each Class Members' pro rate share percentage, and then applied that to the Net Common Fund to determine each Class Members' settlement amount.

If the Agreement is approved, all collective members who submit valid and timely Claims Administration Forms will release all claims that relate to the failure to pay overtime under the FLSA and under applicable state wage and hour laws as alleged in the Amended Complaint as it relates to the alleged misclassification of the

[2] Here, the Parties have agreed to pay the FLSA Putative Collective Members fifty percent (50%) of their settlement amounts as W-2 wages, and fifty percent (50%) as liquidated damages on a 1099 Form to reduce tax liabilities for both Parties. Defendant vehemently denies it would owe any liquidated damages and believes it had a good-faith basis for its classification of FLSA Putative Collective Members. Additionally, Defendant will pay any employment taxes it owes on such payments to FLSA Putative Collective Members in addition to the Common Fund.

Class Members. No other statutory, or common law claim would be released.[3] As explained further below, because this is a settlement under the FLSA, and the parties are not asking for a settlement under Rule 23, there are no absent class members. Consequently, only those individuals who actually consent to join the lawsuit will release any claim. Furthermore, collective members now have an opportunity to make an objection pursuant to the Court's instructions.

The Agreement provides the FLSA Putative Collective Members with an extremely fair and equitable result. During this litigation and the Parties' settlement information, Defendant provided information on each collective member regarding self-reported hours, which, if accurate, would only entitle the *entire collective* to just $77,486 in overtime compensation. Plaintiffs disputed the veracity of these records and information and obviously fought vigorously to obtain a settlement well above what the information would have provided. If, however, a collective member elects to not participate in this collective action settlement, or otherwise fails to timely submit a Claims Administration Form within the forty-five (45) day period, the Agreement provides that the non-participating collective member may file their own claim against Defendant. As a result, non-participating collective members' *pro rata* settlement portion will revert back to the Defendant. Accordingly, while Plaintiffs believe that FLSA Putative Collective Members will all be very satisfied with the class settlement, to the extent any are not satisfied, or elect to not participate in this

[3] As explained above, the Plaintiffs are entering into broad general releases in exchange for a service award and which are now being provided to the Court with this motion.

class settlement for any reason whatsoever, the collective member will not be prejudiced or forced to participate in this collective settlement, and the Defendant will also not be prejudiced in that the non-participating collective members' *pro rata* share will revert back to the Defendant. Additionally, if a collective member objects to the Settlement, Counsel for the Parties will work together to address that collective member's concerns and bring it to the attention of the Court.

In accordance with the legal principles outlined below, the Parties respectfully request the Court approve the Agreement. The instant adversarial action involves disputed factual and legal issues that could provide the Plaintiffs and the putative collective a complete or partial bar to their claims. Ultimately, the Parties recognized the significant risks in proceeding with this collective action lawsuit. The Parties agree that the terms of settlement reached reflect a reasonable "give-and-take" on the major issues in dispute. Specifically, Defendant's agreement to make *any* payment to Plaintiffs reflects a significant concession (for purposes of settlement only) with respect to Defendant's position that the QA/QC Specialist and Eligibility Analysts positions are exempt from overtime pay under the FLSA. The settlement also provides that the Plaintiffs will receive overtime compensation under the agreement for each workweek, even if they may not have worked *any* overtime hours in a particular workweek. The Parties agree that the negotiated terms of settlement reflect a reasonable compromise of all disputed issues, and that the negotiated settlement is in the Parties' best interest.

Finally, there can be no reason to not approve this settlement because the Agreement actually provides each and every collective member with the option of "opting-in" to the class settlement as well as objecting. To the extent any collective member is not satisfied or elects to not participate in this class settlement for any reason whatsoever, the collective member will not be forced to participate in this class settlement, and the non-participating collective members' *pro rata* share will revert back to the Defendant. Additionally, collective members may object to the proposed settlement. Again, while Plaintiffs believe that the collective members will all be satisfied with the settlement, the fact that the collective members can elect to not participate in this collective action or they can object means they cannot be prejudiced by same.

Accordingly, the Parties ask the Court to enter an Order approving the Agreement, ordering the Parties to undertake the notice and administration process as described in the Agreement and to file a notice of dismissal with the Court once the notice and settlement administration is complete.

## III. Standard of Review

FLSA collective action settlement agreements require judicial approval. *Lynn's Food Stores, Inc. v. U.S. Dep't of Labor*, 679 F.2d 1350 (11th Cir. 1982). Because the settlement of a FLSA claim has no binding effect on absent class members—it only binds the potential class members who affirmatively opt-in—approval of the Settlement Agreement is governed by FLSA procedures, not the procedure prescribed for class actions. *See Calderone v. Scott*, 838 F.3d 1101, 1102 (11th Cir.

2016) ("The FLSA's § 216(b) requires plaintiffs to 'opt in' to be considered class members. In contrast, a Rule 23(b)(3) class action requires plaintiffs to 'opt out' if they do not wish to be bound by the court's judgment.")

"Compromises of disputed claims are favored by the courts." *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910). Indeed, there is a "policy of encouraging settlement of litigation." *Lynn's Food Stores, Inc.*, 679 F.2d at 1354). "Particularly in class action suits, there is an overriding public interest in favor of settlement." *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977); *see also Murchison v. Grand Cypress Hotel Corp.*, 13 F.3d 1483, 1486 (11th Cir. 1994) (noting that the Eleventh Circuit Court of Appeals "favor[s] and encourage[s] settlements in order to conserve judicial resources."). When asked to review and approve the terms of a settlement under the FLSA, there is a "strong presumption" in favor of approval. *Hamilton v. Frito-Lay, Inc.*, 2007 WL 328792, at *2 (M.D. Fla. Jan. 8, 2007), report and recommendation adopted, 2007 WL 219981 (M.D. Fla. Jan. 26, 2007). This is particularly true when, as here, the parties are represented by experienced counsel. Indeed, absent fraud and collusion, the court may not only rely on the judgment of experienced counsel, but "should be hesitant to substitute its own judgment for that of counsel." *Diaz v. Hillsborough Cty. Hosp. Auth.*, 2000 WL 1682918, at *4 (M.D. Fla. Aug. 7, 2000) (quoting *Cotton*, 559 F. 2d at 1330). The settlement in this case was finalized after the parties engaged in protracted negotiations and mediated before an experienced,

nationally recognized employment law mediator. As the parties explain in more detail below, this Agreement is fair and reasonable, and should be approved.

## IV. The Agreement is Fair and Reasonable

The Court should approve the Agreement because it is fair and reasonable. The settlement was negotiated at arm's-length by experienced counsel; the amount Horne has agreed to pay is fair and adequate; there is a significant risk to the collective members of recovering significantly less than the monies claimed and proving that they worked the hours claimed, and risk as to securing a final determination as to whether the case should proceed as a collective action, especially in light of Defendant's asserted personal jurisdiction defense in its motion to dismiss; the collective members will receive adequate notice sufficient for each potential opt-in to assess his or her rights; the collective members are sufficiently similar for certification for settlement purposes; and the amount of fees, costs and incentive payments requested are in line with sums previously awarded in similar cases. This settlement is particularly fair and reasonable because, unlike a class action settlement, only those individuals who voluntarily choose to become part of the lawsuit, and thus to participate in the settlement, are bound by it. Any potential collective member who thinks the settlement is unfair or inadequate is not obligated to participate in the settlement and is not bound by it.

A. <u>Settlement is the product of arm's length negotiations and of a bona fide dispute.</u>

The settlement in this case was reached after counsel for the Parties had exchanged significant individualized collective member data, engaged in several months of discussions and settlement conversation, engaged in a mediation before a mediator recognized widely for his expertise in FLSA settlements, and then only

settled a few weeks later after the mediator made a mediator's proposal acceptable to both Parties. It is the opinion of counsel for both parties that the settlement is fair, adequate, and reasonable. As courts have repeatedly held, the Court should defer to the judgment of counsel unless there is evidence of collusion. *See Weldon v. Backwoods Steakhouse, Inc.*, 2014 WL 4385593, at *3 (M.D. Fla. Sept. 4, 2014) ("Short of a trial, the Court is not in as good a position as the parties to determine the reasonableness of the settlement."). Finally, "the fact that the continued negotiations of settlement agreement terms and Notice documents were lengthy" and continued "after the initial mediation and involving additional negotiation" further demonstrates the absence of collusion. *George v. Acad. Mortg. Corp. (UT),* 369 F. Supp. 3d 1356, 1370 (N.D. Ga. 2019). There is no evidence of collusion here.

B. <u>Probability of Success and of Decertification</u>

In considering settlements, courts should weigh the probability of success, the likelihood of delay in obtaining recoveries, and the risk inherent in any litigation. *See*, *e.g.*, *Gevaerts v. TD Bank*, No. 1:14-CV-20744-RLR, 2015 WL 6751061, at *7 (S.D. Fla. Nov. 5, 2015). "FLSA claims typically involve complex mixed questions of fact and law." *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 743 (1981). The claims here are no different.

As discussed above, the primary legal issue in these claims is whether the QA/QC Specialist and Eligibility Analyst positions are exempt from overtime pay under the FLSA. This could involve questions of fact (such as the level of discretion exercised by collective members) and then questions of law for the Court to

determine. Additionally, disputes exist over the hours worked and claimed by Plaintiffs and the collective. Lastly, the Parties hotly disputed whether liquidated damages could be claimed in this case as Defendant contends and strenuously believes it had both a subjective and objective good faith basis for its classification decision. If Defendant prevailed on its exemption defense, then Plaintiffs and the class would receive no recovery. If Defendant prevailed on its records regarding the number of hours worked, Plaintiffs and the collective would only be owed $77,486 in overtime compensation. *See supra*, pp. 4-5 (explaining range of monetary success based on class data here).

In contrast, the settlement provides immediate and substantial benefits to Plaintiffs and the collective in an amount well-above the hours Defendant claims the collective worked. The strong likelihood that any recovery would take years also weighs in favor of approval. Indeed, public policy favors settlement, especially in cases such as this, where substantial resources can be conserved by avoiding time, cost, and protracted litigation. *See Lynn's Food Stores, Inc.*, 679 F.2d at 1354 ("…we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation"). Plaintiffs' claims are not likely to be decided until after extensive discovery, a motion for decertification, motions for summary judgment and perhaps a trial. Even if Plaintiffs were to prevail, there would likely be an appeal. Absent settlement, the FLSA Putative Collective Members are not likely to see any recovery for years. That fact alone weighs strongly in favor of approval.

C. Due Process Considerations

Because there are no absent class members in an FLSA collective action, a settlement under the FLSA does not require the exacting due process considerations necessary under a class action settlement. Here, collective members will still have an objection period to make an objection if they so choose pursuant to the Court's previous instructions.

In this case, collective members will receive a Notice and Claims Administration Form. *See* Exhibit A and B to Settlement Agreement. The Notice will notify collective members of the existence and nature of the case and will advise them how to obtain and read the actual Settlement Agreement. Only if they then independently decide to opt-in and complete the Claims Administration Form will they be bound by the settlement, including receiving the settlement payment and being bound by the release.[4] Any individual who chooses not to opt-in is not part of the case and is not bound in any way by the settlement or any release. That significant difference between a class action settlement and an FLSA settlement weighs in favor of approval since the individual class members will have the opportunity to make an informed decision about whether to join the settlement and will not be bound by it unless they affirmatively choose to do so. Additionally, collective members may choose to object to the settlement in which case Counsel for

[4] Here, the release is limited to FLSA and state wage and hour laws related only to the alleged misclassification of Class Members as exempt. *See* Ex. A, ¶ 12 and Ex. B. This does not include any other wage related claim release outside of the overtime exemption issue whatsoever, and is a narrow release in exchange for the settlement here.

the Parties shall work together to address the concerns and bring it to the Court's attention.

## V. <u>Conditional Certification for Settlement Purposes</u>

The Parties ask the Court to conditionally certify a collective action for settlement purposes only, and to send the Notice and Claims Administration Form to the following individuals:

- All QA/QC Specialists or Eligibility Analysts on the Texas Rental Relief Program who worked for Defendant within three years prior to the filing of this lawsuit to the approval date. [5]

Certification of an FLSA collective action is typically a two-step process. *Hipp v. Liberty Nat'l Life, Inc.*, 252 F.3d 1208, 1218 (11th Cir. 2001). The first step, conditional certification, is considered under a more lenient standard and requires the plaintiff to make a lesser showing. The second step, triggered by a motion for decertification typically filed after discovery, requires a more exacting review of whether class members (the opt-ins) are similarly situated.

After a case is conditionally certified, the Court allows the parties to provide notice to the potential class members, who then decide whether to join the lawsuit. All individuals who agree to join the lawsuit are then part of the case. The parties here ask, and stipulate to, the Court conditionally certifying this action under the FLSA for settlement purposes only, and thus to allow them to mail the Notice and Claims Administration Form to all FLSA Putative Collective Members as described above. Plaintiffs contend that given the fact that the individuals who would receive

notice all worked for the Defendant in the same positions, were paid by salary with no overtime, and worked under the same or similar job descriptions, there is sufficient evidence to meet the evidentiary showing required to conditionally certify this action for settlement purposes. Plaintiff Lochren worked as a QA/QC Analyst and Plaintiff Woods worked as an Eligibility Analyst. Thus, Plaintiffs have sufficient knowledge and standing to represent the proposed class. As alleged in Plaintiffs' Amended Complaint, Class Members performed similar duties and had similar restrictions on any alleged discretion which could make them exempt. *See* D.E. 22, ¶¶ 39-46. Defendant has agreed to collective treatment and notice for purposes of settlement and while not agreeing to Plaintiffs' above assertions, it does not oppose them for purposes of this Motion.[6]

Additionally, the three individual plaintiffs moving forward here shows there would be interest in such an action. On February 16, 2023, another opt-in plaintiff joined this action. *See* D.E. 59. Courts in this District and state have certified opposed motions to certify with similar number of individuals included in a suit. *See Kirk v. Dr. Goodroof, Inc.*, 2015 WL 1138445 (M.D. Fla. March 13, 2015) (one additional opt-in plaintiff sufficient to show interest); *Smith v. Cable Wiring Specialists, Inc.*, 2014 WL 4795160 (M.D. Fla. Sept. 25, 2014) (Plaintiff and one opt-in form sufficient for conditional certification in overtime case); *Robbins-Pagel v. Wm. F.*

[5] The chart attached to the Agreement identifies 187 Class Members in this definition.

[6] Defendant maintains that but for the settlement, this case should not ultimately be maintained as a collective action, and thus should ultimately not be conditionally certified or, alternatively, decertified if it is not settled. The fact that the case may (or should) ultimately not proceed on a collective basis does not affect whether it should be conditionally certified for settlement purposes.

*Puckett, Inc.*, 2006 WL 3393706 (M.D. Fla. 2006) (three affidavits alleging claims of unpaid overtime enough to establish interest).[7] All that is needed is more than one person to support a showing of interest. Here, the two plaintiffs and one opt-in plaintiff bringing forth and pursuing these claims support interest. This is especially true in a settlement context where Defendant has agreed to not oppose the request for certification.

## V. Following the Notice and Objection Period, the Parties Shall Move for Approval of the Settlement.

Based on this Curt's Order dated August 9, 2023 [D.E. 75], following the notice and objection period, the Parties shall move for a second approval of this Settlement where the Court can consider any raised objections or other concerns. Based on the fair and reasonable recovery obtained here, the Parties are confident this Court will grant that approval following the notice/objection period.

## VI. Attorneys' Fees and Costs, and General Release Payments

The Supreme Court and Eleventh Circuit held that "attorneys who create a common fund are entitled to be compensated for their efforts from a reasonable percentage of that fund." *Stahl v. Mastec, Inc.*, 2008 WL 2267469, *1 (M.D. Fla. 2008); citing *Camden I Condominium Assoc., Inc. v. Dunkle*, 946 F.2d 768, 774 (11th

---

[7] *See also Diejuste v. R. J. Elec., Inc.*, 2007 WL 2409831 (S.D. Fla. Aug. 21, 2007) (granting conditional certification when two individuals sought overtime wages); and *Wynder v. Applied Card Systems, Inc.*, 2009 WL 3255585 (S.D. Fla. 2009) (certifying FLSA collective action based on Plaintiff's declaration and one opt-in declaration).

Cir. 1991) ("Henceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class."); *See also Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980); *In re Checking Account Overdraft Litig.*, 830 F.Supp.2d 1330, 1362 (S.D.Fla. 2011) ("[T]he Eleventh Circuit made clear in *Camden I* that percentage of the fund is the exclusive method for awarding fees in common fund class actions"). In an FLSA collective action, "[a]lthough the Court must consider the reasonableness of any award of attorney's fees, it is not required to conduct an in-depth analysis of the award unless it is unreasonable on its face." *Vogenberger v. ATC Fitness Cape Coral, LLC,* 2015 WL 1883537, at *5 (M.D. Fla. Apr. 24, 2015); *Hosier v. Mattress Firm, Inc.* 2012 WL 2813960 (M.D. Fla. June 8, 2012). In addition, the FLSA provides for a mandatory award of "Costs of the action to a prevailing plaintiff." *See* 29 U.S.C. § 216(b).

"The lodestar approach should not be imposed through the back door via a 'cross-check.'" *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1362. Rather, the lodestar "creates an incentive to keep litigation going in order to maximize the number of hours included in the court's lodestar calculation." *In re Quantum Health Resources, Inc.,* 962 F. Supp. 1254, 1256 (C.D. Cal. 1997).[8] Precisely for this reason,

[8] Additionally, "[a] contingency fee arrangement often justifies an increase in the award of attorney's fees." *In re Sunbeam,* 176 F. Supp. 2d at 1335 (quoting *Behrens,* 118 F.R.D. at 548); *see also In re Continental Ill. Sec. Litig.,* 962 F.2d 566 (7th Cir. 1992) (holding that when a common fund case has been prosecuted on a contingent basis, plaintiffs' counsel must be compensated adequately for the risk of non-payment); *Ressler,* 149 F.R.D. at 656 ("Numerous cases recognize that the attorney's contingent fee risk is an important factor in determining the fee award."); *Walters v. Atlanta,* 652 F.Supp. 755, 759 (N.D. Ga. 1985), *modified,* 803 F.2d 1135 (11th Cir.). As Judge King from the Southern District observed:

in *Camden* the Eleventh Circuit criticized the lodestar and the inefficiencies that it creates. 946 F.2d at 773–75. In so doing, the court "mandate[d] the *exclusive* use of the percentage approach in common fund cases, reasoning that it more closely aligns the interests of client and attorney, and more faithfully adheres to market practice." *Goldberger v. Integrated Resources, Inc.,* 209 F.3d 43, 50 (2d Cir. 2000) (emphasis added); *see also* Alba Conte, *Attorney Fee Awards* § 2.7, at 91 fn. 41 ("The Eleventh ... Circuit[ ] repudiated the use of the lodestar method in common-fund cases"). Under *Camden*, courts in this Circuit regularly award fees based on a percentage of the recovery, without discussing lodestar at all. "[A] common fund is itself the measure of success and represents the benchmark on which a reasonable fee will be awarded.... In this context, monetary results achieved predominate over all other criteria." *Camden,* 946 F.2d at 774 (citations and alterations omitted).

Here, Plaintiffs' Counsel[9] is requesting an attorneys' fees and costs award of thirty percent (30%) of the Common Fund (or $112,500). Plaintiffs' Counsel currently has $3,350.41 in outstanding expenses (largely the filing fee and cost of

---

> Generally, the contingency retainment must be promoted to assure representation when a person could not otherwise afford the services of a lawyer.... A contingency fee arrangement often justifies an increase in the award of attorney's fees. This rule helps assure that the contingency fee arrangement endures. If this "bonus" methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing.

*Behrens,* 118 F.R.D. at 548.

[9] Here, this matter was prosecuted by C. Ryan Morgan, Esq., as lead counsel. Mr. Morgan is an equity shareholder in Morgan & Morgan, P.A., the country's largest plaintiff-side firm. Mr. Morgan practices almost exclusively in wage and hour class/collective actions and is chair of the firm's Employee Rights Group (encompassing approximately twenty-five lawyers) who handle claims throughout the United States. Mr. Morgan is experienced counsel who has assisted in numerous class/collective actions claims involving hundreds of thousands of individuals across the country.

mediation), meaning the "net" attorneys' fees are approximately $109,149.59, which equals 29.1% of the Common Fund after costs are deducted. Numerous recent decisions in similar wage and hour class/collective actions have awarded attorneys' fees consistent with or above the amount requested here. *See, e.g.*, *Wolff v. Cash 4 Titles*, 2012 WL 5290155, at *4 (S.D. Fla. 2012) ("One-third of the recovery is considered standard in a contingency fee agreement."); *Seghroughni v. Advantus Rest., Inc.*, 2015 WL 2255278, at *1 (M.D. Fla. May 13, 2015) ("An attorney's fee… which is one-third of the settlement fund… is fair and reasonable in light of… fee awards in comparable cases.); *Freeman v. Trainingwheel Corp., LLC*, 2020 WL 7401488 (M.D. Fla. June 26, 2020) (Approving common fund in collective action with fees of 1/3 plus out-of-pocket costs); *Stahl*, 2008 WL 2267469 (Approving award of 28.8% of the $13,137,365 common fund, or $3,659,365 for fees and costs); *Signorelli v. Utiliquest LLC*, 5:08-cv-38-OC-10GRJ, Docket Entry 46 (July 25, 2008) (Hodges, J.) (awarding 30% for attorneys' fees out of $10,000,000 common fund); *Kreher v. City of Atlanta, Georgia*, 2008 WL 113999561 (N.D. Ga. Sept. 30, 2008) (Approving common fund in collective action that provided $2,410,000 in fees from a $7,500,000 common fund, or 32.13%); *Vogenberger v. ATC Fitness Cape Coral, LLC,* 2015 WL 1883537, at*3 (M.D. Fla. April 24, 2015) (fee award of 33% of the FLSA common fund); *Reyes v. AT & T Mobility Servs., Ltd. Liab. Co.*, 2013 WL 12219252, at *3 (S.D. Fla. June 21, 2013) ("Class Counsel's request for one-third of the settlement fund is also consistent with the trend in this Circuit.); *Graves v. Estes Heating & Air Conditioning, Inc.,* Case

No. 3:14-cv-0084-TCB, Dkt. 47 (N.D. Ga. 2015) (awarding fee of 33.33% of the common fund in FLSA case); *Morefield v. NoteWorld, LLC*, 2012 WL 1355573 (S.D. Ga. 2012) (same); *Atkinson v. Wal-Mart Stores, Inc.*, 2011 WL 6846747, at *6 (M.D. Fla. 2011) (same); *Kemper v. Rent-A-Center, Inc.,* Case No. 4:00-cv-00435-RH-WCS, Dkts. 14-15 (N.D. Fla. 2000) (same). As such, this Court should initially approve the attorneys' fees requested here. Defendant does not oppose Plaintiff's request for an award of 30% of the common fund to Plaintiffs' counsel for attorneys' fees and costs.

Lastly, in exchange for signing a general release of all claims in favor of Defendants, Plaintiffs shall each receive an additional $5,000 from the Common Fund. While the Parties are aware of the Eleventh Circuit's ruling in *Johnson v. NPAS Sols, LLC*, 975 F.3d 1244 (11th Cir. 2020) (hereinafter "*Johnson*"), *Johnson* is inapplicable here because the amounts being paid is not a true "service award" as a bounty to the class representatives in exchange for nothing more. Here, Plaintiffs have agreed to additional consideration, i.e., a general release of any and all claims, in favor of Defendant. This is an infinitely larger scope of release than for the collective members here who are only releasing wage and hour claims asserted in this Action. This additional consideration distinguishes this matter from *Johnson* and allows the Court here to approve the settlement as written. Indeed, District courts within the Eleventh Circuit have continued to permit such payments in exchange for general releases, even after the initial September 17, 2020 *Johnson* decision. *See, e.g.*, *Candiss Tweedie v. Waste Pro of Fla., Inc.*, Case No. 8:19-cv-01827, (M.D. Fla. August 5, 2021) (Adopting May 4, 2021 Report and Recommendation, (ECF No. 57), in a

Fair Credit Reporting Act class action settlement, which provides for a $7,500 incentive award to the named plaintiff in exchange for a general release.); and *Dozier*, 2021 WL 6061742 at *8-9 (approving $7,500 payment to named plaintiff in exchange for general release).

Furthermore, *Johnson* was opining on service awards (with no general releases in exchange) under Rule 23, not FLSA collective actions. "Rule 23 actions are fundamentally different from collective actions under the FLSA." *Genesis Healthcare Corp. v, Symczyk*, 133 S. Ct. 1523, 1529 (2013). The Eleventh Circuit in *Johnson* expressly indicated that its decision can be overturned if the Rules Committee or Congress elects to **<u>amend Rule 23</u>**, stating:

> Although it's true that such awards are commonplace in modern class-action litigation, that doesn't make them lawful, and it doesn't free us to ignore Supreme Court precedent forbidding them. If the Supreme Court wants to overrule *Greenough* and *Pettus*, that's its prerogative. Likewise, **if either the Rules Committee or Congress doesn't like the result we've reached, they are free to <u>amend Rule 23</u>** or to provide for incentive awards by statute.

*Johnson*, 975 F.3d at 1260 (emphasis added). Clearly, if the prohibition to the category of incentive awards contemplated in *Johnson* was intended to apply to all lawsuits, and not just Rule 23 class action lawsuits, the Eleventh Circuit would have so stated and amending Rule 23 by "either the Rules committee or Congress" to the extent they did not "like the result" the Eleventh Circuit reached would not resolve this issue. Thus, the Eleventh Circuit in *Johnson* clearly limited its opinion to only apply to the category of incentive awards at issue for class actions brought pursuant to Rule 23. Here, the Parties respectfully request this Court initially approve the

requested payments as contemplated by the settlement agreement.

**VII. <u>Conclusion</u>**

In sum, the Parties submit that the Agreement is a fair and reasonable resolution of the disputed issues and believe strongly that its entry will ensure to "secure the just, speedy, and inexpensive determination" of this action. Accordingly, the Parties urge this Court to: (i) determine that the Settlement Agreement is fair and reasonable and should be approved; (ii) conditionally certify this case, for settlement purposes only, as a collective action under Section 216(b) of the FLSA; (iii) approve the issuance of the proposed Notice and Claims Administration Form to the FLSA Putative Collective Members; and (iv) order the Parties to submit a second motion for approval following the notice/objection period as described in Paragraph 15 of Exhibit A.

Respectfully submitted this 30th day of August, 2023.


| | |
|---|---|
| **/s/ C. Ryan Morgan**<br>C. Ryan Morgan, Esq.<br>FL Bar No: 0015527<br>Morgan & Morgan, P.A.<br>20 N. Orange Ave, 15th Floor<br>Orlando, FL 32801<br>T: (407) 420-1414<br>F: (407) 245-3401<br>E: RMorgan@forthepeople.com | ***/s/ Jacob Hanson***<br>Jacob Hanson<br>FBN 91453<br>BRADLEY ARANT BOULT CUMMINGS LLP<br>100 North Tampa Street, Suite 2200<br>Tampa, FL 33602<br>T: (813) 559-5500<br>E: jhanson@bradley.com<br><br>**James William Manuel**<br>MS Bar No. 9891<br>BRADLEY ARANT BOULT CUMMINGS LLP<br>188 E Capitol St # 450 |

| | |
|---|---|
| | Jackson, MS<br>E: wmanuel@bradley.com<br>T: 601.592.9915<br><br>**T. Matthew Miller**<br>ASB-2129-166T (pro hac vice)<br>**Sarahanne Vaughan**<br>ASB-1515-Q08B (pro hac vice)<br>BRADLEY ARANT BOULT CUMMINGS LLP<br>1819 Fifth Avenue North<br>Birmingham, AL 35203<br>T: (205) 521-8000<br>E: mmiller@bradley.com<br>E: svaughan@bradley.com<br>***Attorneys for Defendant*** |