# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

GERALDINE LOCHREN, TOMEKA
WOODS and STEPHANIE THEOPIN-
DELEON,

                 Plaintiffs,

v.                                     Case No:   6:21-cv-1640-JSS-LHP

HORNE LLP,

                 Defendant

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

       This cause came on for consideration without oral argument on the following

motion filed herein:

> **MOTION:**  **JOINT AMENDED MOTION FOR INITIAL
> APPROVAL OF THIRD AMENDED COLLECTIVE
> ACTION SETTLEMENT AGREEMENT (Doc. No. 89)**
>
> **FILED:**  **March 13, 2024**
>
> _____
>
> **THEREON** it is **RECOMMENDED** that the motion be **GRANTED**.

## I.    BACKGROUND.

On October 4, 2021, Plaintiffs Geraldine Lochren and Tomeka Woods, on behalf of themselves and those similarly situated, filed this putative collective action against Defendant Horne LLP, asserting a single claim that Defendant failed to pay overtime wages in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207.   Doc. No. 1.   On November 30, 2021, Plaintiffs filed an amended complaint, asserting the same claim.   Doc. No. 22.

Thereafter, the case settled at mediation, prior to Plaintiffs moving to certify this matter as a collective action and before any additional plaintiffs opted in.   Doc. Nos. 47, 49.   The parties settled the matter on behalf of both the named Plaintiffs and the putative collective.   *See generally* Doc. No. 51-1.   And on September 22, 2022, the parties filed a joint motion asking the Court to approve their settlement, authorize notice to the potential collective action members, approve a notice and administration process, retain jurisdiction to enter final judgment once the administration process of the settlement was complete, and thereafter dismiss the case with prejudice.   Doc. No. 51.   On referral, the undersigned denied that motion without prejudice for several reasons, including, among other things, because the parties had not demonstrated that final approval of their settlement in conjunction with collective action certification for settlement purposes—prior to

notice to any unknown potential collective action members and without an ability for the potential opt-ins to object to the settlement—was appropriate.   Doc. No. 54.

On February 16, 2023, one additional person, Stephanie Theophin-DeLeon, opted in as a Plaintiff.   Doc. Nos. 59, 59-1.   On February 21, 2023, the parties filed a renewed motion for settlement approval.   Doc. No. 64.   Upon consideration of the renewed motion, Doc. No. 64, which included several proceedings related thereto, Doc. Nos. 66–71, the Court ultimately denied the renewed motion for the same reasons as the initial motion.   Doc. No. 75; *see also* Doc. No. 72.   The Court ordered the parties to: (1) file a motion seeking preliminary approval of the proposed collective action settlement and conditional certification for settlement purposes, with appropriate supporting documentation, to include revised notices to contain an objections period for potential opt-ins; (2) file a motion seeking final approval of the proposed settlement as to only the named Plaintiffs and any opt-in Plaintiffs at that time; (3) abandon the proposed settlement and file a motion for conditional certification alone; or (4) abandon the proposed settlement and proceed with the case by the current named and opt-in Plaintiffs alone.   Doc. No. 75, at 4.

The parties thereafter filed a second renewed request, by which the parties the parties sought preliminary approval of their settlement reached at mediation, but by submission of a revised Second Amended Collective Action Settlement Agreement.   Doc. Nos. 78, 78-1.   The parties asked for preliminary approval of

their settlement, conditional certification of the matter as a collective action for settlement purposes only, approval of their proposed notice procedure which allowed an objections period for any opt-ins, and the filing of a motion for final approval of the settlement once the notice/objections process was complete.   Doc. No. 78.

On November 20, 2023, the Court granted that motion, in large part.   Doc. No. 81; *see also* Doc. No. 79.   Specifically, the Court conditionally certified the matter as an FLSA collective action for settlement purposes only, with the collective defined as:

> All QA/QC Specialists or Eligibility Analysts on the Texas Rental Relief Program who worked for Defendant within three years prior to the filing of this lawsuit to the approval date.

Doc. No. 81, at 3–4.   The Court also authorized the parties' proposed notice and administration procedure, and provided a date certain of February 8, 2024 for the parties to file their joint motion for final settlement approval, to include completed claims forms, any objections from potential opt-ins, and a request for final approval of a fee award for Plaintiffs' counsel.   *Id.*   The Court denied the motion, however, to the extent that the parties' agreement provided for service awards to the named Plaintiffs or requested a final determination of regarding attorneys' fees at that time. *Id.* at 4.

The parties sought and were given an extension of time to file their motion for final settlement approval, through February 29, 2024.   *See* Doc. Nos. 82–85.   On February 29, 2024, the parties did not file a motion for final settlement approval, however.   Instead, Stephanie Theopin-Deleon, as new named Plaintiff, filed a second amended complaint.   Doc. No. 87.[1]   The parties also filed a Joint Motion to Modify or Amend Order Approving Joint Motion for Initial Approval of Second Amended Collective Action Settlement, by which the parties in essence sought to start the process over, by seeking approval of various modifications to the proposed settlement that had previously received preliminary approval in November 2023. Doc. No. 86.   Upon review, the Court denied the motion without prejudice because, due to the number of changes requested by the parties, the Court was unable to make a determination of the fairness of the proposed amendments based on the motion.   Doc. No. 88.   The Court ordered the parties to file an amended motion for initial approval of the new settlement agreement in accordance with *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982), on or before March 18, 2024.   *Id.*

---

[1]   The second amended complaint again only contains one claim for unpaid overtime compensation in violation of the FLSA.   Doc. No. 87.   Defendant has answered the second amended complaint.   Doc. No. 91.

That brings us to the present motion, filed on March 13, 2024.   Doc. No. 89. In the motion, the parties explain that they have entered into a Third Amended Collective Action Settlement Agreement (hereinafter, "Amended Settlement Agreement") to resolve the proposed collective's claims, and they seek approval by the Court with the same procedures previously employed in granting their prior motion for preliminary approval.   *Id.*   Specifically, the parties request preliminary approval of their settlement, conditional certification of the proposed collective for settlement purposes only, approval of their proposed notice and administration procedures, and an order requiring a motion for final settlement approval once that notice process is complete.   *Id.* at 22.

The Amended Settlement Agreement changes the named Plaintiff to represent the collective to reflect the named Plaintiff in the second amended complaint (Stephanie Theopin-Deleon), *see* Doc. No. 87, but does not provide any incentive award to Ms. Theopin-Deleon.   *See* Doc. No. 89-1.   And although the parties discuss attorneys' fees in the motion, the parties are only seeking preliminary approval, and the Amended Settlement Agreement provides that they will seek final approval of any fee award in conjunction with final approval of the settlement.   *See* Doc. No. 89, at 18–22.   The parties explain that the Amended Settlement Agreement was the result of their discovery of new potential opt-ins who should have been included in the original settlement, to effect the change in

the named Plaintiff, and to change the amount of the attorneys' fees requested due to the changed size of the putative collective.   *Id.* at 4.

The Amended Settlement Agreement contains substantially similar terms to those previously approved by the Court, except it changes the number of opt-ins, the total settlement amounts, and removes the terms the Court previously found objectionable.   *See* Doc. No. 89-1.   The Amended Settlement Agreement establishes a gross common fund of $518,846.82, of which $383,846.82 will be allocated to resolving the claims of Plaintiff and putative collective action members; Plaintiff's counsel will seek $127,500.00 in attorneys' fees; and $7,500.00 will be allocated to payment to a third-party administrator to administer the notice and settlement process.   *Id.* ¶¶ 5–6, 9.   The amount each putative collective action member will receive will be computed by the same formula previously approved by the Court, taking into account weeks worked; salary rates; regular rate of pay; the appropriate overtime rate; and the number of overtime hours estimated on a class-wide basis.   *Id.* ¶ 6(c).   Each qualified claimant will be paid on a pro-rata basis.   *Id.*

The Amended Settlement Agreement is contingent on Court-approval of the agreement.   *Id.* ¶ 8.   Putative collective action members must complete, sign, and return a valid Claims Administration Form within forty-five (45) days of mailing/emailing of the Notice and Claims Administration Form to be entitled to

receive their approved allocation.   *Id.* ¶¶ 10–12.   Putative collective action members also have forty-five (45) days from the mailing/emailing of the Notice to object to the settlement.   *Id.* ¶ 12.   The Notice and Claims Administration Form will be emailed and mailed to putative collective action members within fourteen (14) days of the Court approving the settlement.   *Id.* ¶ 9.   Upon conclusion of the notice and opt-in process, Plaintiff's counsel will file the returned Claims Administration Forms with the Court, along with a motion for final approval of the parties' settlement.   *Id.* ¶ 14.   Plaintiff's counsel will also apply to the Court for an award of attorneys' fees, not to exceed $127,500.00.   *Id.* ¶ 19.   All portions of the net settlement fund not claimed by putative collective action members shall belong to Defendant, free and clear.   *Id.* ¶ 15.

The motion (Doc. No. 89) has been referred to the undersigned, and the matter is ripe for review.[2]   For the reasons discussed herein, the undersigned will respectfully recommend that the motion be granted.

## II.   APPLICABLE LAW.

In *Lynn's Food Stores*, the Eleventh Circuit explained that claims for compensation under the FLSA may only be settled or compromised when the Department of Labor supervises the payment of back wages or when the district

---

[2] After the filing and referral of the motion, the case was reassigned to United States District Judge Julie S. Sneed.   Doc. No. 92.

court enters a stipulated judgment "after scrutinizing the settlement for fairness." 679 F.2d at 1353.   A court may only enter an order approving a settlement if it finds that the settlement "is a fair and reasonable resolution of a bona fide dispute," of the plaintiff's FLSA claims.   *Id.* at 1353–55.   In doing so, the Court should consider the following nonexclusive factors:

- The existence of collusion behind the settlement.
- The complexity, expense, and likely duration of the litigation.
- The state of the proceedings and the amount of discovery completed.
- The probability of plaintiffs' success on the merits.
- The range of possible recovery.
- The opinions of counsel.

*See Leverso v. SouthTrust Bank of Ala., Nat'l Assoc.*, 18 F.3d 1527, 1531 n.6 (11th Cir. 1994).   The Court may approve the settlement if it reflects a reasonable compromise of the FLSA claims that are actually in dispute.   *See Lynn's Food Stores*, 679 F.2d at 1354.   There is a strong presumption in favor of settlement.   *See Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977).[3]   When a settlement agreement includes an amount for attorneys' fees and costs, the "FLSA requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee

---

[3] The Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.   *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

recovers under a settlement agreement."   *Silva v. Miller*, 307 F. App'x 349, 351 (11th Cir. 2009) (per curiam).[4]

"The FLSA authorizes collective actions against employers accused of violating the FLSA."   *Morgan v. Fam. Dollar Stores, Inc.*, 551 F.3d 1233, 1258 (11th Cir. 2008) (citing 29 U.S.C. § 216(b)).   The Eleventh Circuit has sanctioned a two-stage approach for determining whether to certify an FLSA collective action pursuant to section 216(b).   *Id.* at 1260.   The first stage is the "notice" or "conditional certification" stage, where the Court must determine whether notice of the action should be given to potential collective action members.   *Id.* at 1260–61.   The second stage is the "decertification stage," where, upon a motion for decertification, the Court must determine whether the collective should be decertified or the case should proceed to trial as a collective action.   *Id.* at 1261.

Given the Court's March 5, 2024 Order requiring the parties to file "an amended motion for initial approval of the new settlement agreement," Doc. No. 88, this action is currently at the first stage—conditional certification.   A plaintiff seeking conditional certification must show that there are other employees who desire to opt into the action and that the employees who desire to opt in are similarly situated.   *Wooton v. Steelmaster Indus., Inc.*, No. 6:19-cv-419-Orl-37GJK, 2019 WL

---

[4] Unpublished opinions of the Eleventh Circuit are cited as persuasive authority. *See* 11th Cir. R. 36–2.

2423786, at *2 (M.D. Fla. June 10, 2019) (citing *Dybach v. State of Fla. Dep't of Corrs.*, 942 F.2d 1562, 1567–68 (11th Cir. 1991)).   The standard at the first stage is fairly lenient and is typically satisfied through some combination of the pleadings, consents to join, affidavits, or other evidence demonstrating that there are other similarly situated employees who would opt into the action.   *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1218 (11th Cir. 2001)).   "If the district court conditionally certifies the class, putative class members are given notice and the opportunity to opt-in."   *Id.* (quotation marks and citation omitted).

## III.   ANALYSIS.

Here, the parties seek to employ a modified version of the general two-tiered approach to FLSA settlements, in that they seek conditional certification of the collective action for settlement purposes only, preliminary approval of their agreement, and approval of their notice procedures to the putative collective, all by the present motion.   Doc. No. 89.   Other courts in this Circuit have found this approach permissible, and it has previously been found permissible in this case. Doc. Nos. 79, 81.   *See, e.g.*, *Thomas v. JSTC, LLC*, No. 6:19-cv-1528-RBD-GJK, 2022 WL 2200387, at *3 (M.D. Fla. Apr. 28, 2022) (addressing preliminary approval of FLSA settlement and conditional certification of collective for settlement purposes only, authorizing notice procedure); *Dominique v. Capreit, Inc.*, No. 2:18-cv-231-FtM-NPM, 2020 WL 6585602, at *4 (M.D. Fla. Nov. 10, 2020) (same); *Fernandez v. Harvard*

*Maint., Inc.*, No. 2:11-cv-509-FtM-36SPC, 2011 WL 6934123, at *2 (M.D. Fla. Dec. 14, 2011), *report and recommendation adopted*, 2011 WL 6934134 (M.D. Fla. Dec. 30, 2011) (same); *see also Hosier v. Mattress Firm, Inc.*, No. 3:10-cv-294-J-32JRK, 2011 WL 7071062, at *4 (M.D. Fla. Dec. 29, 2011), *report and recommendation adopted*, 2012 WL 177533 (M.D. Fla. Jan. 23, 2012) (conditionally certifying FLSA collective for settlement purposes only and allowing notice to putative collective members before final approval of settlement).

A.   Conditional Certification for Settlement Purposes.

For purposes of settlement only, the parties stipulate to and ask that the Court conditionally certify a collective action to include: "All QA/QC Specialists or Eligibility Analysts on the Texas Rental Relief Program who worked for Defendant within three years prior to the filing of this lawsuit to the approval date."   Doc. No. 89, at 16.

The requirements for conditional certification—whether other similarly situated employees desire to opt into the action—have been satisfied.   Two named Plaintiffs brought this action (Doc. No. 22), and one other person has opted in (Doc. Nos. 59, 59-1), with the opt-in Plaintiff Stephanie Theopin-Deleon becoming the named Plaintiff in the second amended complaint (Doc. No. 87), and the initial named Plaintiffs Geraldine Lochren and Tomeka Woods becoming opt-ins (*see* Doc.

Nos. 86, 89).[5]   The parties also provide a list of potential opt-ins demonstrating that 265 persons who worked as a QA/QC Analyst or as an Eligibility Analyst could potentially be part of the collective.   *See* Doc. No. 89, at 16 n.7; Doc. No. 89-1, at 20–26.   These persons all worked for Defendant in the same salaried positions with similar job descriptions and allegedly did not receive overtime compensation. Doc. No. 89, at 16–17.   *See generally Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996) (at the notice stage, "[p]laintiffs need show only that their positions are similar, not identical, to the positions held by the putative class members." (quotation marks and citations omitted)).   Moreover, the parties stipulate and agree that collective treatment is appropriate for settlement and notice purposes. Doc. No. 89, at 17; *see also Fernandez*, 2011 WL 6934123, at *3, *report and recommendation adopted*, 2011 WL 6934134 (M.D. Fla. Dec. 30, 2011) (finding that plaintiffs "met the low threshold and lenient standard necessary for the Court to recommend conditional certification as an FLSA collective action" given the parties' stipulation for settlement purposes to proposed collective of certain employees); *Williams v. Coventry Health Care of Fla., Inc.*, No: 6:16-cv-731-Orl-41TBS, 2016 WL

---

[5]  Although Stephanie Theopin-Deleon was not the named Plaintiff at the time the initial settlement was reached at mediation, *see* Doc. No. 49,  Stephanie Theopin-Deleon has executed the Amended Settlement Agreement, *see* Doc. No. 89-1, and as discussed above, has filed the second amended complaint on behalf of the collective without objection from Defendant.  Thus, the undersigned does not find this change in named Plaintiffs to impact the analysis herein.

7013530, at *2 (M.D. Fla. Oct. 4, 2016), *report and recommendation adopted*, 2016 WL 6947354 (M.D. Fla. Nov. 28, 2016) (finding the plaintiff demonstrated that conditional certification was warranted where the defendant agreed to conditional certification); *Mannino v. Anderson-Collins, Inc.*, No. 6:07-cv-1853-Orl-19UAM, 2008 WL 11472144, at *1 (M.D. Fla. July 17, 2008) (granting motion to conditionally certify two classes where the parties stipulated that the employees encompassed by each class had similar job duties and pay provisions).

Accordingly, the undersigned respectfully recommends the Court grant the parties' request for conditional certification of the collective action for settlement purposes only.

B.   <u>The Proposed Settlement</u>.

As discussed above, the Amended Settlement Agreement establishes a gross common fund of $518,846.82, of which $383,846.82 will be allocated to resolving the claims of the named Plaintiff and putative collective action members, with Plaintiff's counsel to seek $127,500.00 in attorneys' fees.  Doc. No. 89-1 ¶¶ 5–6. The amount each putative collective action member will receive will be computed by a formula taking into account weeks worked; salary rates; regular rate of pay; the appropriate overtime rate; and the number of overtime hours estimated on a class-wide basis.  *Id.* ¶ 6(c).  Each qualified claimant will be paid on a pro-rata basis.  *Id.*

The parties agree that this case involves a compromise of Plaintiff's and the proposed collective's claims.   Doc. No. 89, at 9.   Thus, it is incumbent upon the Court to review the reasonableness of the proposed settlement.   *See Lynn's Food Stores,* 679 F.2d 1350.

As set forth by the parties, this case involves disputed issues of liability, with Plaintiff alleging that Defendant misclassified her and those similarly situated individuals employed as QA/QC Specialists or Eligibility Analysts as exempt employees under the FLSA.   Doc. No. 87; Doc. No. 89, at 2, 8–9, 13–14.   Defendant, however, maintains that the each of the QA/QC Specialists or Eligibility Analysts were properly classified as exempt employees under the FLSA and thus were not entitled to overtime.   Doc. No. 89, at 2.   The parties and their counsel agree that the settlement reached is fair and reasonable, which accounts for the probability of success.   *Id.* at 3, 7–8, 12.   Indeed, if Defendant prevailed on its exemption defense, Plaintiff would be entitled to no recovery.   *Id.* at 13–14.   According to Defendant's records, if accurate and assuming the collective were so entitled, the entire collective would be entitled to only $77,486.00 in overtime compensation.   *Id.* at 8. Moreover, the parties vigorously dispute whether liquidated damages could be claimed in this case given Defendant's belief that it had both a subjective and objective good faith basis for its classification decision.   *Id.* at 13–14.   And according to the parties, even if each collective action member worked fifty (50)

hours per week during the limitations period, and assuming they were entitled to overtime compensation, the total amount due and owing to the collective, exclusive of liquidated damages, would be approximately $584,675.00, which is nearly the equivalent of the common fund.   *Id.* at 6.

Ultimately, the parties recognize the substantial risks of proceeding with this collective action lawsuit, and given these risks, Defendant makes a significant concession of making any payment to the collective given its position that the QA/QC Specialists or Eligibility Analysts were exempt employees.   *Id.* at 9.   To the extent that any potential collective action member is not satisfied with the settlement, the Amended Settlement Agreement provides an option for that person to object to its terms, and that person also has the option of not participating in the settlement.   *Id.*   There is no evidence of collusion, as the parties submit that negotiations regarding settlement were lengthy, and continued through mediation resulting in a mediator's proposal and ultimately this settlement.   *Id.* at 12–13. This adequately explains the reasons for the compromise.   *See also Metzler v. Med. Mgmt. Int'l, Inc.*, No. 8:19-cv-2289-T-33CPT, 2020 WL 5994537, at *3 (M.D. Fla. Oct. 9, 2020) ("[C]ourts in this District have previously found the use of such a pro rata formula fair." (citations omitted)).

The undersigned notes that by the Amended Settlement Agreement, the named Plaintiff and any opt-ins will release only "wage and hour claims against

Defendant as asserted in [this case] and related to the alleged misclassification of their position as exempt from overtime under the FLSA and state and local wage payment laws."   Doc. No. 89-1 ¶ 11; *see also id.* at 14–15.   This limited release does not raise concerns under *Lynn's Food*.   *See Reyes v. Fresenius Med. Care Holdings, Inc.*, No. 6:20-cv-706-PGB-LRH, 2021 WL 7630115, at *4 (M.D. Fla. Aug. 24, 2021), *report and recommendation adopted*, 2021 WL 7630116 (M.D. Fla. Aug. 26, 2021) (approving a release of state law claims that were not asserted in the complaint because they were narrowly tailored to the FLSA wage claim that was alleged); *see also Monahan v. Rehoboth Hosp., Inc.*, No. 6:15-cv-1159-Orl-40KRS, 2015 WL 9258244, at *2 (M.D. Fla. Dec. 18, 2015) (noting that "a release in an FLSA settlement is generally reasonable so long as it is narrowly-tailored to the wage claims asserted in the complaint").   There also do not appear to be any other non-cash concessions in the settlement agreement, such as confidentiality or nondisparagement provisions, that would typically be found to undermine the fairness of an FLSA settlement.   *See* Doc. No. 89-1.

As it relates to the award of attorneys' fees, counsel will seek up to $127,500.00 of the common fund to account for attorneys' fees and costs, which equates to less than twenty-five percent of the common fund.   Doc. No. 89, at 20–21; Doc. No. 89-1 ¶ 6(b).[6]   Counsel appears to seek a preliminary finding of reasonableness, as

---

[6] The undersigned notes that the parties rely on the common fund doctrine

Plaintiff will apply for a final approval of the attorney fee award upon motion for final approval of the settlement.   Doc. No. 89, at 21–22.

Although it does not appear that the Eleventh Circuit has spoken on this issue, courts in this District diverge on whether the class common fund analysis[7] is appropriate in the FLSA collective action context.  *Compare Williams v. Coventry Health Care of Fla., Inc.*, No. 6:16-cv-731-Orl-41TBS, 2018 WL 1466395, at *3 (M.D. Fla. Mar. 26, 2018) ("[I]t is clear that the percentage of the common fund analysis is not proper in FLSA cases."), *with Pierre-Val v. Buccaneers Ltd. P'ship*, No. 8:14-cv-01182-CEH-EAJ, 2015 WL 12843849, at *1 (M.D. Fla. Dec. 7, 2015) ("The Court finds that the amount of fees requested is fair and reasonable using the 'percentage of a common fund' method.").   However, to the extent that the common fund analysis applies, the fees sought are within the range courts have found reasonable.   *See, e.g.*, *Pierre-Val*, 2015 WL 12843849, at *2 ("Counsel's request for thirty-two percent (32%) of the Fund is consistent with the fees awarded by other courts in the Eleventh

---

applicable to class action cases alone and do not provide a lodestar analysis, and do not assert that the attorneys' fees were negotiated separate and apart from the funds to be paid to the collective.  Doc. No. 89.   Therefore, the Court must make a reasonableness finding as to the proposed award of fees.  *See, e.g.*, *Freeman v. Trainingwheel Corp., LLC*, No. 2:19-cv-52-FtM-NPM, 2020 WL 7401488, at *3 (M.D. Fla. June 26, 2020) ("Because the attorneys' fees were not agreed upon separately and without regard to the amount paid to Plaintiffs, the Court makes a reasonableness finding.").

   [7] *See Camden I Condominium Assoc., Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991) ("Henceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class.").

Circuit." (citations omitted)); *Stahl v. MasTec, Inc.*, No. 8:05-cv-1265-T-27TGW, 2008 WL 2267469, at *2 (M.D. Fla. May 20, 2008) (approving combined fees and expenses of 28.8% of settlement common fund in FLSA case).

Given the posture of this case, "[w]ithout 'knowing the size of the collective class — or whether there will even be a class — any request for approval [of the attorney fee award] at this juncture is premature.'" *See Copeland-Stewart v. New York Life Ins. Co.*, No. 8:15-cv-159-T-23AEP, 2016 WL 231237, at *3 (M.D. Fla. Jan. 19, 2016) (quoting *Leigh v. Bottling Group, LLC*, No. DKC 10-0218, 2011 WL 1231161, at *5 (D. Md. Mar. 29, 2011)); *see also Alvarez v. GEO Secure Servs., LLC*, No. 9:20-CV-80696-WPD, 2020 WL 13349078, at *2 (S.D. Fla. Nov. 13, 2020) (noting that if a significant amount of the common fund reverted to the defendant, the set amount of fees sought could prove unreasonable).

Accordingly, the undersigned will recommend that the Court approve the procedure of allowing an application for attorneys' fees in conjunction with a motion for final approval of the settlement, after the notice and administration process is complete. *See* Doc. No. 81, at 4 (finding same procedure appropriate); *see also Alvarez v. GEO Secure Servs., LLC*, No. 9:20-CV-80696-WPD, Doc. Nos. 45–48 (S.D. Fla.) (finding that after notice to potential opt-in plaintiffs, "the Court will be in a significantly better position to scrutinize the FLSA settlement for fairness under *Lynn's Food* and to determine the reasonableness of an attorneys' fee motion";

ultimately considering separate fee petition in conjunction with motion for final approval of settlement after notice to the collective (footnote omitted)).

Considering the foregoing, and the strong presumption favoring settlement, the undersigned will recommend that the Amended Settlement Agreement (Doc. No. 89-1) be preliminarily approved. *See Dominique*, 2020 WL 6585602, at *3 (granting preliminary approval of FLSA collective action settlement prior to notice to the collective where there was no evidence of fraud or collusion, and the settlement resulted from arms' length negotiations between well informed and experienced counsel); *Fernandez*, 2011 WL 6934123, at *2, *report and recommendation adopted*, 2011 WL 6934134 (M.D. Fla. Dec. 30, 2011) (finding good cause to grant preliminary approval of proposed collective action settlement, but noting that "[o]f course the proposed settlement agreement must be reviewed and approved by any members of the Collective Class.").

C.    Notice to the Collective.

The Amended Settlement Agreement provides that a Notice and Claims Administration Form will be mailed and emailed to the potential opt-ins within fourteen (14) days of an order approving the settlement.   Doc. No. 89-1 ¶ 9.[8]

---

[8] Although the Amended Settlement Agreement speaks in terms of court approval, the Claims Administration Form makes clear that the Court will have only preliminarily approved the settlement.   *See* Doc. No. 89-1, at 12, 13.

Putative collective action members must complete, sign, and return a valid Claims Administration Form within forty-five (45) days of mailing/emailing of the Notice and Claims Administration Form to be entitled to receive their approved allocation. *Id.* ¶¶ 10–11.   Putative collective action members have forty-five (45) days from the mailing/emailing of the Notice to object to the settlement.   *Id.* ¶ 12.   Within ten (10) days of the claim bar date, the third-party administrator will provide counsel a list of qualified claimants who timely returned a Claims Administration Form.   *Id.* ¶ 13.   Within twenty-one (21) days of the claim bar date, Plaintiff's counsel will file the completed Claims Administration Forms with the Court.   *Id.* ¶ 14.   By the same date, the parties shall file a joint motion for final approval of the settlement, to include any objections from potential opt-ins.   *Id.*   After the Court's final approval, Defendant will transmit payment.   *Id.* ¶ 15.

These procedures appear appropriate.   *See, e.g., Mosley v. Lozano Ins. Adjusters Inc.*, No. 3:19-cv-379-J-32JRK, 2020 WL 3978055, at *3 (M.D. Fla. June 23, 2020), *report and recommendation adopted*, 2020 WL 3971936 (M.D. Fla. July 14, 2020) (approving notice procedure in preliminary approval of FLSA settlement that was "concise, easy to understand, inform[ed] the opt-in Plaintiffs of the essential terms of the Settlement Agreement and their rights"); *see also Williams*, 2016 WL 7013530, at *2, *report and recommendation adopted*, 2016 WL 6947354 (M.D. Fla. Nov. 28, 2016)

("[C]ourts in this district and others have found email to be an appropriate and efficient addition to first class mail in the delivery of notice to a class.").

IV.   **RECOMMENDATION**.

For the reasons discussed herein, it is respectfully **RECOMMENDED** that the Court:

1.     **GRANT** the Joint Amended Motion for Initial Approval of Third Amended Collective Action Settlement Agreement (Doc. No. 89).

2.     **CONDITIONALLY CERTIFY** this matter as an FLSA collective action for settlement purposes only, with the collective defined as:

> All QA/QC Specialists or Eligibility Analysts on the Texas Rental Relief Program who worked for Defendant within three years prior to the filing of this lawsuit to the approval date.

3.     **PRELIMINARILY APPROVE** the parties' Amended Settlement Agreement (Doc. No. 89-1).

4.     **AUTHORIZE** the notice and administration process in the Amended Settlement Agreement (Doc. No. 89-1 ¶¶ 9–16 & at pp. 11–19).

5.     **ORDER** the parties to file a joint motion for final settlement approval on a date set forth by the Court, to include all completed Claims Administration Forms and any objections from the potential opt-ins, and also to include a request for final approval of an award of attorneys' fees to

Plaintiff's counsel, supported by citation to legal authority, addressing the issues outlined herein.

## **NOTICE TO PARTIES**

A party has fourteen days from the date the Report and Recommendation is served to serve and file written objections to the Report and Recommendation's factual findings and legal conclusions. Failure to serve written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. 11th Cir. R. 3-1.

Recommended in Orlando, Florida on July 26, 2024.

LESLIE HOFFMAN PRICE
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy